IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| DAVID C. LIN, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>CHARLTON Y. HO,<br><br>    Defendant. | CIVIL ACTION NO.: 4:25-cv-072 |

**O R D E R**

This matter is before the Court on Defendant Charlton Y. Ho's Motion to Dismiss or, in the Alternative, for Summary Judgment. (Doc. 10.) Defendant argues that Plaintiffs failed to timely perfect service on Defendant within the statutory period because of a lack of reasonable diligence (constituting laches) and then failed to act with the greatest possible diligence as required by Georgia law after Defendant filed a Special Appearance Answer. (See id.) For the reasons explained below, the Court **DENIES** Defendant's Motion. (Id.)

**BACKGROUND**

This case arises from a motor vehicle collision that occurred on December 31, 2022, in Chatham County, Georgia. (Doc. 1-1, p. 3.) As a result of the collision, Defendant was issued traffic citations. (Doc. 10, p. 1.) The prosecution of those citations concluded with a final disposition on January 24, 2023. (Id.) Under Georgia law, the statute of limitations was tolled during the pendency of the criminal proceedings and resumed upon their termination. (Id.) Accordingly, neither party disputes that the statute of limitations for Plaintiffs' claims arising from the motor vehicle collision expired on January 24, 2025. (Id.; see also doc. 13, pp. 6 & 9.)

Prior to filing, Plaintiffs' counsel performed a Lexis public records search and hired Knopf Investigations, Inc., to obtain Defendant's address.[1]  (Doc. 13, p. 2.)  Plaintiffs filed their Complaint in the State Court of Chatham County, Georgia, on December 3, 2024, within the applicable limitations period.  (Doc. 1-1, p. 2.)  Plaintiffs then began their efforts to serve Defendant at his Los Angeles, California, residence.  (Doc. 13, p. 3.)  On December 5, 2024, Plaintiffs sent the Complaint and service materials via FedEx to the Los Angeles County Sheriff's Office, Inglewood Division, which received the documents on December 6, 2024.  (Id.)  The next day, Plaintiffs also emailed a courtesy copy of the Complaint and discovery to Defendant's auto insurer.  (Id.)

Plaintiffs allege that, between December 23, 2024, and January 28, 2025, their counsel followed up with the Los Angeles County Sheriff's Office seven times to check on the status of service.  (Id. (counsel "follow[ed]-up" on December 23, 2024; December 27, 2024; January 2, 2025; January 9, 2025; January 14, 2025; January 21, 2025; and January 28, 2025).)  On January 14, Plaintiffs learned that service of process by the Sheriff's Office had been suspended because of wildfires in the Los Angeles area, with no known date for resumption.  (Id. at p. 3.)  On January 28, Plaintiffs were notified that an attempt at service on January 24, 2025, the day the statute of limitations expired, did not succeed because the apartment number on the service documents was incomplete, as it consisted of only two digits when the apartment numbers in the complex were four digits long.  (Id.)

That same day (January 28, 2025), Plaintiffs retained private process server Mark Valenti.  (Id. at p. 4.)  On January 29, Plaintiffs filed a motion with the Chatham County State Court to have

---

[1] Plaintiffs' service-related efforts are described in their Response in opposition (which is the document to which the Court cites in this section of the Order, (doc. 13)), and this description is supported by an affidavit of Plaintiffs' counsel, (see doc. 13-19), and numerous documentary exhibits, (see docs. 13-1 through 13-19).

Valenti appointed as a special process server. (Id.) The State Court judge signed the order on February 10, 2025, and Plaintiffs sent the order and service materials to Valenti on February 11. (Id.) According to his affidavit, Valenti filed a request with the United States Postal Service for Defendant's full address but he did not receive a response with the information. (Doc. 13-11, pp. 2–3.) On February 14 and February 20, Plaintiffs' counsel followed up with Valenti for status updates. (Doc. 13, p. 4.) On February 20, Valenti reported that he had attempted service and reached Defendant via the gated complex's intercom system, but Defendant had terminated the call. (Id.) Defendant filed a Special Appearance Answer on February 21, 2025, asserting defenses including insufficient service and laches. (Id.) At this time, Plaintiffs were still unaware of Defendant's full apartment number. (See doc. 13-11, p. 3.)

On February 24, 2025, Plaintiffs retained a second private process server, Barbara Wolford of Kinsey Investigators. (Doc. 13, p. 4.) Plaintiffs moved to appoint her as a special process server on February 25, and the State Court judge signed the order on February 26. (Id. at p. 5.) On February 27, Plaintiffs provided Wolford with the signed order, Complaint, and supporting documents. (Id.) That same day, Wolford determined and confirmed Defendant's correct apartment number. (Id.) On March 1, 2025, Wolford successfully served Defendant at his residence in Los Angeles, California. (Id.)

After being served, Defendant removed the case to this Court, (doc. 1), and filed the at-issue "Motion to Dismiss, or, in the Alternative, for Summary Judgment" based on Plaintiffs' failure to perfect service within the limitations period, (doc. 10). Plaintiffs filed a Response, outlining the steps taken to serve Defendant and asserting that they acted with due diligence throughout the service process. (Doc. 13.) Defendant filed a Reply, arguing that, in addition to demonstrating laches and a lack of reasonable diligence in serving Defendant, Plaintiffs have failed

to meet the heightened standard of showing they exercised the greatest possible diligence in perfecting service, which was required by Georgia law after the statute of limitations expired and Defendant raised a service-related defense. (Doc. 17.)

Generally, review of a motion to dismiss is limited "to the face of the complaint and attachments thereto." Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1368 (11th Cir. 1997). If the Court "accept[s] matters outside the pleading, it must convert the motion to dismiss into one for summary judgment." Christy v. Sheriff of Palm Beach Cnty., Fla., 288 F. App'x 658, 664 (11th Cir. 2008) (quoting Prop. Mgmt. & Inv., Inc. v. Lewis, 752 F.2d 599, 605 (11th Cir. 1985)). In apparent recognition of the likelihood that Plaintiffs would present extraneous evidence, Defendant's motion was entitled a "Motion to Dismiss or, in the Alternative, for Summary Judgment," and it cited and relied heavily on the law and standards relating to summary judgment. (See doc. 10, pp. 3–4.) In responding in opposition to dismissal, Plaintiffs file numerous exhibits that constitute matters outside the pleading, and Defendant raised no objection thereto in his Reply. Accordingly, the Court evaluates Defendant's Motion as one for summary judgment under Federal Rule of Civil Procedure 56.

## DISCUSSION

The Eleventh Circuit Court of Appeals has recently, and aptly, summarized the law that applies to the dispute before the Court:

> Under Georgia law, "[i]f the filing of the petition is followed by timely service perfected as required by law, although the statute of limitation runs between the date of the filing of the petition and the date of service, the service will relate back to the time of filing so as to avoid the limitation." Giles v. State Farm Mut. Ins., 765 S.E.2d 413, 416 (Ga. Ct. App. 2014) (quotation omitted). Georgia's service-of-process law directs the person making service to serve the defendant within five days of receiving the summons and complaint. O.C.G.A. § 9-11-4(c). If service is perfected within this five-day window, then it relates back to the date the complaint was filed. Giles, 765 S.E.2d at 417.

> But even if service is made after the statute of limitations and § 9-11-4(c)'s five-day harbor provision have expired, service can nonetheless relate back to the filing of the complaint to avoid the statute of limitations if the plaintiff exercised diligence in perfecting service. See Ga. Farm Bureau Mut. Ins. v. Kilgore, 462 S.E.2d 713, 715 (1995); Van Omen v. Lopresti, 849 S.E.2d 758, 761 (2020). And if "the defendant asserts insufficiency of service after the statute of limitations expires, service can still be timely perfected and relate back to the time of filing, provided that the plaintiff acts with 'the greatest possible diligence to serve the defendant from that point forward.'" Arias v. Cameron, 776 F.3d 1262, 1269 (11th Cir. 2015) (quoting Moody v. Gilliam, 637 S.E.2d 759, 761 (2006)). "Where service occurs after the statute of limitation has run, plaintiffs bear the additional burden of showing the exercise of due diligence in serving the defendants." Robinson v. Boyd, 701 S.E.2d 165, 168 (2010).

Wilson v. Hearos, LLC, 128 F.4th 1254, 1262–63 (11th Cir. 2025). "As the burden rests on the plaintiff to ensure diligent service, [the plaintiff] must provide specific dates or details to show diligence and cannot rely on conclusory statements." Zeigler v. Hambrick, 571 S.E.2d 418, 420 (Ga. Ct. App. 2002), overruled on other grounds by Giles, 765 S.E.2d 413. "The plaintiff must also show the failure to timely serve was not her fault." Strickland v. Home Depot, 507 S.E.2d 783, 785 (Ga. Ct. App. 1998) (quotations and citation omitted).

Here, there is no dispute that the Complaint was filed on December 3, 2024, and that the statute of limitations expired fifty-one days later, on January 23, 2025. There is also no dispute that Defendant was not served until March 1, 2025, thirty-six days after the statute of limitations expired. (Doc. 13, pp. 10, 13; see also doc. 10, p. 9.) After the five-day harbor provided by O.C.G.A. § 9-11-4(c) expired on January 28, 2025, the timeliness of the action became dependent on Plaintiffs showing "that they exercised due diligence in obtaining service 'as quickly as possible.'" Parker v. Silviano, 643 S.E.2d 819, 821 (Ga. Ct. App. 2007) (quoting Zeigler, 571 S.E.2d at 419). Moreover, when Defendant filed a Special Appearance Answer on February 21, 2025, raising service defenses including laches, (doc. 10, p. 2), Plaintiffs became subject to the "greatest possible diligence" standard going forward. See Fluellen v. Davis, 869 S.E.2d 169, 172 (Ga. Ct. App. 2022) (citation modified).

5

I.   **Whether Plaintiffs Exercised Sufficient Diligence in Attempting to Serve Defendant up to February 21, 2025**

Defendant first argues that Plaintiffs failed to show that they acted with due diligence in perfecting service as quickly as possible and that the delay in perfecting service was not attributable to their own fault. (Doc. 10, pp. 6–11; doc. 13, p. 2.) Defendant urges that the delay in service was due to the "[Plaintiffs'] fault in failing to provide a correct address for Defendant" before filing suit. (Doc. 17, p. 4.) Defendant further emphasizes the eighteen-day gap between December 5, 2024 (when Plaintiffs first sent the summons and Complaint to the Los Angeles County Sheriff's Office) and December 23, 2024 (when Plaintiffs first followed up on service). (Id. at p. 5.) Defendant also points to a supposed two-week period of inactivity following Plaintiffs' moving to appoint Valenti as a Special Process Server. (Id. at p. 8.)

First, as to Plaintiffs' failure to obtain Defendant's complete address, under Georgia law, the plaintiff bears the burden of investigating and learning where the defendant may be located and served. See Patterson v. Johnson, 486 S.E.2d 660, 661–62 (Ga. Ct. App. 1997). Properly discharging the duty to confirm a defendant's address may require a plaintiff to show that they "consulted 'readily available references such as county property records, postal authorities, sheriff or other law enforcement agencies, or voting registration officials to ascertain the location of appellee's address and effect prompt service.'" Braswell v. Belk, Inc., No.1:14-CV-00185-MHS, 2014 WL 12621570, at *2 (N.D. Ga. Mar. 6, 2014) (quoting Strickland, 507 S.E.2d at 785).

The evidence shows that Plaintiffs did investigate (using a Lexis public records search and an investigator), before suing, and they determined the address of the apartment complex where Defendant could be located and served, though the specific apartment number they obtained was incomplete. (Doc. 13, p. 2.) Plaintiffs also repeatedly followed up with the Sheriff's Office throughout January on the status of service and likely would have learned of the issue with the

6

apartment number more quickly had the Sheriff's Office not suspended its service of process activities because of wildfires in the weeks just before the running of the statute of limitation. The record further shows that Plaintiffs continuously undertook diligent efforts to determine the complete apartment number (once they learned of the issue). Upon learning that the apartment number was incomplete, Plaintiffs immediately hired Valenti to help locate and serve Defendant. (Id. at pp. 3–4.) Valenti made at least one request with the United States Postal Service to determine the missing digits for Defendant's apartment number. (Doc. 13-11, pp. 2–3.) Plaintiffs continuously followed up with Valenti on the status of service. (Doc. 13, p. 4.) Thus, even considering the initial issue with the address, Plaintiffs have shown that they made consistent and considerable efforts towards locating Defendant.

Turning next to the alleged gaps in activity highlighted by Defendant, it is true that Georgia courts have found dismissal to be appropriate for relatively short lapses in service efforts, even where the plaintiff is not subject to the demanding "greatest possible diligence" standard. See, e.g., Parker, 643 S.E.2d at 822 n.2 (noting that, in granting dismissal for a ten-day lapse in service, the trial court did not improperly hold plaintiff to the greatest possible diligence standard); Akuoko v. Martin, 680 S.E.2d 471, 472–74 (Ga. Ct. App. 2007), overruled in part on other grounds by Giles, 765 S.E.2d 413, (affirming dismissal where defendant was not served until thirteen days after the statute of limitation expired). Defendant cites numerous cases where relatively brief periods of inactivity were found to have warranted dismissal, arguing that this case should be treated similarly. (Doc. 17, pp. 5–6 (citing Lipscomb v. Davis, 783 S.E.2d 398, 399–400 (Ga. Ct. App. 2016); Griffin v. Trinidad, 850 S.E.2d 782, 786 (Ga. Ct. App. 2020); Green v. Cimafranca, 653 S.E.2d 782, 786 (Ga. Ct. App. 2007); Moore v. Wilkerson, 641 S.E.2d 578, 580 (Ga. Ct. App. 2007)).)

The present case can easily be distinguished from the above cases, however. In both <u>Parker</u> and <u>Akuoko</u>, dismissal was found to be proper because the plaintiffs failed to meet their burden of proving diligence through the provision of specific dates or details. See <u>Parker</u>, 643 S.E.2d at 822 (holding that the "lack of such [sufficiently specific] evidence authorized the trial court to find that the [plaintiffs] failed to meet [their] burden" in showing diligence); <u>Akuoko</u>, 680 S.E.2d at 473 (affirming dismissal where the plaintiff failed to meet her burden due to the lack of any "specific dates or details" showing diligence). <u>Lipscomb</u>, <u>Green</u>, and <u>Moore</u>, to which Defendant cites in his briefing, all involved longer periods of inactivity by plaintiffs. <u>Lipscomb</u> involved a plaintiff who made only a few scattered attempts at serving the defendant over the course of nearly four months (including only a single attempt at service after the defendant filed a special answer triggering the greatest possible diligence standard). 783 S.E.2d at 399. In <u>Green</u>, the plaintiff was similarly inactive for weeks following the expiration of the statute of limitation and the defendant's filing of a special appearance answer. 653 S.E.2d at 783–84. <u>Moore</u> involved multiple lapses in service attempts that lasted for several months each. 641 S.E.2d at 579.

Plaintiffs' showings here contrast markedly from those made in the cases cited by Defendant. Plaintiffs have provided the specific dates on which they followed up with the Sheriff's Office as well as a detailed account of their use of a private process server in attempting to perfect service. (Doc. 13, pp. 3–4). Plaintiffs' account of their efforts is supported by affidavits and other documentary exhibits. (<u>See</u> docs. 13-1 through 13-19.) Further, Plaintiffs did not sit idly by as the statutory period ran but instead actively followed up on service of process. Plaintiffs filed suit fifty-two days before the expiration of the limitations period, promptly sent service papers to the appropriate sheriff's office, and followed up with the sheriff seven times between December 23, 2024, and January 28, 2025. (Doc. 10, pp. 9–10; doc. 13-19.) The record shows that Plaintiffs did

not lapse into long periods of inactivity but remained active in attempting to perfect service. Moreover, Lipscomb, Green, Moore, and Griffin all involved dismissal under the greatest possible diligence standard rather than the due diligence standard, making them inapposite for the present considerations.  Lipscomb, 783 S.E.2d at 399–400; Green, 653 S.E.2d at 784; Moore, 641 S.E.2d at 580; Griffin, 850 S.E.2d at 881.

"Diligence means 'caution or case; persevering application devoted and painstaking application to accomplish an undertaking: assiduity.'" Wade, 504 S.E.2d at 459 (internal citations omitted). "It embraces the concept of persistence." Id.  By this standard, Plaintiffs acted with due diligence in seeking to locate and serve Defendant up to the time Defendant raised service defenses.  Despite being beset by difficulties beyond their control, Plaintiffs demonstrated persistent effort.  At no point did Plaintiffs lapse into protracted periods of inactivity.  Thus, Plaintiffs were sufficiently diligent in the period between the running of the statute and Defendant's Special Appearance Answer.

II. **Whether Plaintiffs Exercised the Greatest Possible Diligence After Defendant Raised a Service Defense**

Once Defendant filed a Special Appearance Answer on February 21, 2025, raising insufficient service of process as a defense, Plaintiffs became subject to an elevated obligation to exercise the "greatest possible diligence" to perfect service as quickly as possible. See Harris v. Johns, 618 S.E.2d 1, 2 (Ga. Ct. App. 2005) (internal quotations omitted); McFadden v. Brigmam, 855 S.E.2d 409, 412 (Ga. Ct. App. 2021) (internal quotations omitted) ("[If] the statute of limitation has expired and the defendant has raised a service defense in court, the plaintiff has a duty to employ the 'greatest possible diligence to ensure proper and timely service.'").  If this standard is not satisfied, service on the defendant will not relate back in time to the filing of the

complaint and the action will thus be barred by the running of the statute of limitations. See Fluellen, 869 S.E.2d at 172.

To satisfy this heightened standard, a plaintiff has an "immediate obligation" to investigate the issue as soon as possible. Pryor v. Dougles Shopper–The Coffee Cnty. News, 514 S.E.2d 59, 62 (Ga. Ct. App. 1999). Plaintiffs must show that they have exercised the required diligence and that there are no unexplained lapses in attempts to perfect service. Lipscomb, 783 S.E.2d at 399. This showing "must be supported by specific dates and details" and cannot rely on conclusory statements. Id. at 399 (quoting Duffy v. Lyles, 636 S.E.2d 91 (Ga. Ct. App. 2006)); Van Omen v. Lopresti, 849 S.E.2d 758, 764 (Ga. Ct. App. 2020). "In determining whether a plaintiff exercised the greatest possible diligence, [the Court] focus[es] on the plaintiff's actions, not the [d]efendant's." Fluellen, 869 S.E.2d at 172. Defendant argues that Plaintiffs have failed to meet this heightened burden here. (Doc. 17, p. 17.)

Defendant challenges the measures taken by Plaintiffs and their process servers. (Id. at p. 8.) Defendant notes that Plaintiffs knew the apartment complex where Defendant resided no later than February 20, 2025, and confirmed Defendant's exact apartment number by February 27, 2025. (Id. at pp. 17–18.) Despite this, Plaintiffs did not perfect service until March 1, 2025. (Id. at 18.) Defendant emphasizes that, after the unsuccessful attempt at service on February 20, Plaintiffs failed to make efforts such as obtaining information on Defendant's motor vehicle or staking out the premises, contrasting this case with Feinour v. Ricker Co., 604 S.E.2d 588, (Ga. Ct. App. 2004). (See doc. 17, p. 8.) There, the Georgia Court of Appeals found that the plaintiff exercised proper diligence where plaintiff's process server engaged in "much tracking and waiting" to serve the defendant at their residence. Feinour, 604 S.E.2d at 591. While Feinour establishes that utilizing stake out methods can support a finding that a plaintiff exercised the greatest possible

diligence, it does not establish that stake out methods are required for such a finding. In reaching its conclusion, the court in Feinour did not highlight any method utilized but instead emphasized the continuous nature of the plaintiff's efforts. Id. at 591–92.

Here, Plaintiffs also worked continuously to perfect service upon Defendant. Along with their persistent efforts to initially locate and serve Defendant, Plaintiffs promptly hired a new professional process server (Wolford) once Defendant filed his Special Appearance Answer. (Doc. 13, p. 4.) Plaintiffs first contacted Valenti to find out whether additional service attempts would be made before retaining Wolford. (Doc. 13, p. 4; doc. 13-12 p. 2.) After communicating with Valenti, Plaintiffs immediately retained Wolford and sought court approval to appoint her as a special process server on the same day. (Doc. 13, pp. 4–5; doc. 13-14.) Defendant questions Plaintiffs' "unwarranted and dilatory" decision to hire Wolford, deriding it as "wholly unnecessary and superfluous" given that Plaintiffs were already working with Valenti. (Doc. 17, pp. 9–10.) Defendant emphasizes that Plaintiffs did not contact Wolford until several days after both Defendant's Answer and Valenti's email informing them of issues with service. (Doc. 17, p. 10.) However, a brief multi-day gap by itself does not require a finding of insufficient diligence in the context of otherwise continuous efforts to perfect service. See Feinour, 604 S.E.2d at 591 (noting that the plaintiff hired a process server "[s]everal days" after being told that service could not be perfected through the sheriff's office). There is also nothing inherently improper about Plaintiff's decision to hire a second process server in the wake of repeated difficulties in serving Defendant. In Feinour, for instance, the plaintiff hired a second process server after the process servers he first hired had failed to serve the defendant. Id. at 590. Indeed, promptly retaining Wolford here, in light of Valenti's failure to serve Defendant, supports Plaintiffs' claim that they exercised the greatest possible diligence. Rather than continuing to rely on an unsuccessful agent, Plaintiffs

11

immediately acted to hire a new process server who was able to quickly perfect service. The evidence further shows that Plaintiffs were in steady contact with Wolford throughout her efforts to serve Defendant and clearly communicated to her that time was of the essence. (See docs. 13-13 & 13-14.) This is not evidence of a lack of diligence, particularly when Plaintiffs had made persistent efforts at each stage of this action.

This case is easily distinguished from other cases where dismissal was granted based on a failure of the plaintiffs to exercise the greatest possible diligence. In Lipscomb, the plaintiff made only a single attempt to serve the defendant following the defendant's special appearance answer which triggered the greatest possible diligence standard. 783 S.E.2d at 399. Similarly, in Green, the plaintiffs did not attempt to serve the defendant until two weeks after the defendant had raised the defense of insufficient service. 653 S.E.2d at 783–784. In Fluellen, the plaintiff failed to meet the greatest possible diligence standard when she waited five months before attempting service at an address known to have been linked to the defendant. 869 S.E.2d at 172. Other cases dismissing under the greatest possible diligence standard involved delays considerably longer than the eight-day gap between Defendant's Special Appearance Answer on February 21 and the perfection of service on March 1. See Aucoin v. Connell, 209 Fed App'x. 891, 894 (11th Cir. 2006) (finding that plaintiff did not use the greatest possible diligence when he waited over four months to attempt service following defendant's service defense); Life Cycle OB/GYN v. Gill, 917 S.E.2d 822, 825–27 (Ga. Ct. App. 2025) (finding that plaintiff failed to exercise greatest possible diligence where she waited three months without attempting to perfect service following defendant's special appearance answer); Ingraham v. Marr, 540 S.E.2d 652, 655 (Ga. Ct. App. 2000) (finding a lack of diligence where two months elapsed between defendant's service defense and plaintiff's re-attempt at service); Patterson, 486 S.E.2d at 662 (finding a lack of diligence where plaintiffs did

not serve defendant until forty-four days after statute of limitations expired and four months after plaintiffs learned defendant's correct address).

By contrast, Plaintiffs here have continuously and persistently attempted to perfect service throughout the litigation, successfully serving Defendant eight days after the filing of Defendant's Special Appearance Answer. Defendant does not provide a case where such a short lapse—during which the plaintiff was actively working to perfect service—was found to warrant dismissal on the grounds of insufficient diligence. While there may be things that Plaintiffs could have done differently in attempting to serve Defendant, Defendant has not shown that Plaintiffs' efforts at perfecting service were insufficient as a matter of law. Consequently, the Court is unpersuaded by Defendant's argument for dismissal.

## CONCLUSION

For the reasons above, the Court **DENIES** Defendant's Motion to Dismiss, or, in the Alternative, for Summary Judgment. (Doc. 10.) The Court **DIRECTS** the Clerk of Court to **LIFT** the discovery stay, (doc. 20), and **DIRECTS** the parties to confer and submit a renewed Rule 26(f) Report within **FOURTEEN (14) DAYS**.

**SO ORDERED**, this 19th day of November, 2025.

R. STAN BAKER, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA